IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ALEJANDRO JESUS MALDONADO**, on behalf of himself and all other employees similarly situated, known and unknown,<br><br>    Plaintiff,<br><br>v.<br><br>**ROMAN COBBLES, INC.**, an Illinois corporation, and **ROMANO GALLO**, individually,<br><br>    Defendants. | No. 10 CV 4490<br><br>Judge Dow<br><br>Magistrate Judge Schenkier |

**MEMORANDUM OF LAW**

The plaintiff brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq.*, in addition to supplemental claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. Illinois wage and hour law is generally analogous to the FLSA, but it fills certain gaps left in the federal scheme. *See infra*. The plaintiff treats several relevant points of law below.

1. **The basic scheme of the FLSA, IMWL and IWPCA.**

Both the FLSA and the IMWL "obligate an employer to compensate its employees at one and one-half times the regular rate for all hours worked over forty per week." *Renteria v. Italia Foods, Inc.*, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill. Aug. 21, 2003). *See also* 29 U.S.C. § 207; 820 ILCS 105/4(a). Additionally, the FLSA and the IMWL mandate the payment of a minimum hourly wage to non-exempt employees. 29 U.S.C. § 206; 720 ILCS 105/4. The IWPCA mandates that employers must pay wages within 14 days of

the time they are earned. 820 ILCS 115/4. All three laws create private rights of action. 29 U.S.C. § 216(b); 820 ILCS 105/12; 820 ILCS 115/14.

While the FLSA provides a remedy for the unpaid overtime compensation (those hours over 40) and unpaid minimum wages, it provides no remedy for the wages "in between" – what is known as the "gap-time" (generally, the amount of regular wages due between the minimum wage rate and an employee's regular wage rate). Payment for "'gap time' refers to compensation for hours worked (1) before the employee reaches the forty-hour per week overtime threshold, so it cannot violate overtime compensation laws, and (2) at a rate that averages out to more than the applicable minimum wage, so it cannot violate minimum wage laws." *Nicholson v. UTi Worldwide, Inc.*, 2010 U.S. Dist. LEXIS 138468, 15 (S.D. Ill. Feb. 12, 2010) (citing *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 U.S. Dist. LEXIS 16288 (N.D. Ill. Aug. 17, 2004)). "Claims for 'gap time' compensation at regular wages are not cognizable under the FLSA or the IMWL." *Id.* Thus, in his motion, the plaintiff seeks recovery of his unpaid regular wages (amounts which cannot be characterized as unpaid overtime premiums)[1] under the IWPCA.

**2. Individual liability.**

Unlike other contexts where they can hide behind the corporate veil, those who own, operate or manage a business, or those who supervise employees, are likely to be individually liable under the FLSA. The court in *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707 (N.D. Ind. 1998), succinctly explains the parameters of individual liability under the FLSA:

> It is well established that an individual can be considered an "employer" under the FLSA. 29 U.S.C. § 203(d) ("'Employer' includes any person acting

---

[1] The plaintiff seeks *liquidated damages* appurtenant to minimum wages under the FLSA for the weeks in which he was paid nothing at all (and therefore less than the minimum wage) – but technically, in order to avoid double recovery, he makes no claim for the minimum wages themselves under the FLSA. This is because the unpaid minimum wages are effectively subsumed in the amount claimed as and for regular wages under the IWPCA.

> directly or indirectly in the interest of an employer in relation to an employee …") (emphasis added); *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *Dole v. Simpson*, 784 F. Supp. 538, 545 (S.D. Ind. 1991) ("A host of decisions from federal courts of all levels make clear that individuals … may be personally liable for FLSA violations.") Courts do not depend on traditional common law concepts in determining whether an individual is an "employer" under the FLSA, but rather look to the "economic reality" of the employment relationship. *See, e.g., Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 31-33, 81 S. Ct. 933, 936, 6 L. Ed. 2d 100 (1961); *Simpson*, 784 F. Supp. at 545.
>
> * * *
>
> The ultimate question facing the Court in the "economic reality" inquiry is whether the individual had control over the alleged FLSA violation. *See Riordan*, 831 F.2d at 694 (individuals may be held liable under the FLSA "provided that [individual] had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation."); *Simpson*, 784 F. Supp. at 545 (citing *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)). The "economic reality" test is a fact-based inquiry, and therefore is not subject to a rigid, formalistic approach, but courts have often looked to the four factors outlined by the Ninth Circuit in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), as a framework to guide their inquiry. These factors include whether the individual in question (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and 4) maintained employment records.

*Davis*, 38 F. Supp. 2d at 715-716 (internal citations and parentheticals unchanged).

In *Riordan*, the Seventh Circuit said an individual may be liable in an FLSA action "provided [he or she] had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation." 831 F.2d 690, 694 (7th Cir. 1987). The Northern District explains that a "corporate officer with 'operational control' over an employing entity clearly falls within the definition of an individual with supervisory authority." *Alice v. GCS, Inc.*, 2006 U.S. Dist. LEXIS 65498, 17-18 (N.D. Ill. 2006) (Aspen, J.). Further, "even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual." *Id.*

3

(emphasis added). *See also Rasic v. City of Northlake*, 563 F. Supp. 2d 885, 889 (N.D. Ill. 2008) (Schenkier, Mag. J.) ("individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA [which are borrowed in substantive part from the FLSA]").

Looking at Illinois law, individuals who own, operate or manage a business, or who supervise employees, are likely to be individually liable under the IMWL and the IWPCA. *See Morgan v. Speak Easy, LLC*, 625 F. Supp. 2d 632, 645 (N.D. Ill. 2007) (Nolan, Mag. J.); *see also* 820 ILCS 115/2. Moreover, under the IWPCA, "Officers or agents [of a corporation are] deemed to be employers." 820 ILCS 115/13. In addition "to an individual who is deemed to be an employer pursuant to Section 2 of this Act,[2] any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." *Id.*

In the captioned case, the plaintiff alleged that the individual defendant "exercised control over significant aspects of [the corporate defendant's] day-to-day operations . . . acted directly or indirectly in the interest of the 'employer' in relation to the employee plaintiffs represented herein," and violated the FLSA, IMWL and IWPCA. Compl. at ¶¶ 9, 14, 16, 34, 39 & 43. These allegations are admitted by default.

---

[2] The term "'employer'" shall include any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2

### 3. When an employer fails to keep accurate time and payroll records, an approximation will suffice; and employees should not be prejudiced when an employer, who has control of payroll records, defaults.

Where an employer has failed to keep accurate payroll records as required by federal law, the plaintiff need only put forth evidence from which the amount of hours worked may be reasonably inferred and that it will suffice in such cases for the plaintiff to put forth evidence to establish an approximation of the unpaid overtime. In *Ponce v. Tim's Time, Inc.,* 2005 U.S. Dist. LEXIS 20263, 6-7 (N.D. Ill. 2005), the Northern District of Illinois said:

> Where the employer fails to keep accurate records as required by the FLSA, the employee needs to provide evidence from which the amount of hours worked may be reasonably inferred. It is sufficient for the evidence to establish an approximation of the amount of unpaid overtime. If inaccuracy in recordkeeping has made it difficult to ascertain the precise hours, the employer rather than the employees must suffer the consequences. If the plaintiff satisfies this burden, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."

*Ponce v. Tim's Time, Inc.,* 2005 U.S. Dist. LEXIS 20263, 6-7 (N.D. Ill. 2005) (citations omitted).

The doctrine set forth in *Ponce* is applicable in the captioned case because the defendants are in default and have possession or control of the relevant records, and likely control access to many of the most important witnesses – the plaintiffs' former co-workers, managers and supervisors. Because the defendants are in default after abandoning the case, the plaintiff's affidavit puts forth enough evidence to establish a reasonable approximation of unpaid wages.

Courts have also embraced the idea that, without access to discovery, burdens should be relaxed. In the context of the heightened standard for pleading fraud under FRCP 9(b), the Seventh Circuit has said "We don't want to create a Catch-22 situation in which a

complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession and he will not reveal it voluntarily) that she could not conduct before filing the complaint." *Emery v. American Gen. Fin.,* 134 F.3d 1321, 1323 (7th Cir. Ill. 1998) (parenthetical in original). Although *Emery* dealt with pleading requirements in the context of Rule 9(b) rather than a default prove-up, the concept is the same: without access to discovery, the hurdles that plaintiffs must cross should be relaxed.

    **4.    Liquidated (double) damages are the norm, not the exception; and the defendants' default precludes a finding of good faith.**

The FLSA provides that:

> [a]ny employer who . . . [fails to pay minimum wages and/or overtime compensation at the rates required by 29 U.S.C. §§ 206 and 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b)

Once an employer's liability for unpaid minimum wages or overtime compensation is established, liquidated (double) damages are automatic and "mandatory unless the district court finds that the defendant-employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998) (citing 29 U.S.C. § 260). "The employer bears the burden of proving *both* good faith *and* reasonable belief." *Id*. (citing *Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995)) (emphasis added). Once an employer is found liable for underlying damages under the FLSA, it must meet a heavy, two-fold burden in order to raise the only available defense to the assessment of double damages. "In fact, the Seventh Circuit characterizes the employer's burden as 'substantial' . . . ." *Alice v. GCS, Inc.*, 2006

U.S. Dist. LEXIS 65498 (D. Ill. 2006) (quoting *Bankston*, 60 F.3d 1249 at 1254). To meet its burden, an employer must "show that it took 'affirmative steps to ascertain FLSA requirements but, nonetheless, violated its provisions.'" *Pautlitz v. City of Naperville*, 874 F. Supp. 833, 835 (N.D. Ill. 1994) (quoting *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 1991 U.S. Dist. LEXIS 18087 (N.D. Ill., 1991)). Surprisingly, even a showing that FLSA violations were not willful fails to meet the standard. *Alice*, 2006 U.S. Dist. LEXIS 65498 at 21-22 (quoting *Pautlitz*, 874 F. Supp. 833 at 835). "Failure to take affirmative action to ascertain the [FLSA's] requirements 'precludes a finding of *reasonable* good faith,' even where the defendant's practices conform to industry customs and where there is no evidence of a willful violation of the [FLSA]." *Pautlitz*, 874 F. Supp. 833 at 835 (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3rd Cir. 1991), *cert. denied*, 503 U.S. 936 (1992) (emphasis in the original). In sum, "liquidated damages are presumed unless the employer demonstrates that it acted reasonably and in good faith." *Byrne v. Avon Prods.* 125 Fed. Appx. 704, 705 (7th Cir. 2004) (citing *Shea*, 152 F.3d 729 at 733). Once the fact finder determines an employer failed to meet its two-fold burden, "[l]iquidated damages follow automatically." *Byrne*, 125 Fed. Appx. 704 at 705.

Courts do have the discretion to reduce an award of liquidated damages, but it is tempered considerably in that it "must be exercised consistently with the strong presumption under the statute in favor of doubling." *Shea*, 152 F.3d 729 at 733 (citing *Bankston*, 60 F.3d 1249 at 1254; *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986); (additional comparative citation dealing with pre-judgment interest omitted)). In *Byrne*, a jury had returned a special verdict finding that the employer failed to meet its good faith/reasonable belief burden. 125 Fed. Appx. 704 at 705. On appeal, the

employer highlighted evidence it felt would show good faith. *Id*. However, the court declined to overturn the special verdict. *Id*. An employer may not be saved, as a matter of law, from liquidated damages simply by demonstrating some modicum of good faith. Rather, to escape liquidated damages an employer must affirmatively prove "reasonable good faith" as defined by case law. *Supra*. In the end, "[d]oubling is the norm, not the exception . . . ." *Shea*, 152 F.3d 729 at 733 (citing *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir. 1995)).

The defendants in default have cannot make a showing of good faith when the plaintiffs' allegations that:

> The Defendants' violation of the FLSA was willful in that the Defendants was [sic] aware or should have been aware of its [sic] obligations under the FLSA, but nevertheless attempted to circumvent its provisions. [And, the] . . . Defendants failed to take affirmative steps to ascertain its [sic] obligations under the FLSA

are admitted by default. Compl. at ¶¶ 36 & 37. Because the defendants cannot make a showing of good faith, liquidated damages should be assessed to the fullest extent.

**5. Under the *Bonham* rule, the FLSA's 2-year and 3-year statutes of limitation were tolled until the plaintiff became aware of his rights; and in any event, the statute of limitations is an affirmative defense which the defendants have not raised.**

Normally, the FLSA "has a two-year statute of limitations that is extended to three-years for willful violations." *Chavez v. Don Stoltzner Mason Contr., Inc.*, 2010 U.S. Dist. LEXIS 33289 (N.D. Ill. Apr. 5, 2010) (Aspen, J.) (citing 29 U.S.C. § 255(a)).[3] But the plaintiff testified in his affidavit that the defendants failed to post information about wage

---

[3] The "statute of limitations for IMWL claims is three years." *Lizak v. Great Masonry, Inc.*, 2009 U.S. Dist. LEXIS 87665, 21 (N.D. Ill. Sept. 22, 2009) (citing 820 ILCS § 105/12(a); *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 783 n.14 (N.D. Ill. 2007)). And, "as of 2007, a ten-year statute of limitations applies to IWPCA claims. *Rosales v. Placers, Ltd.*, 2011 U.S. Dist. LEXIS 22036 (N.D. Ill. Mar. 4, 2011) (citing 735 ILCS § 5/13-206).

and hour law (*see* Dec. of Pltf. at ¶ 12) as is required by state and federal regulations. 29 C.F.R. 516.4; 29 U.S.C. § 627; 820 ILCS 105/9. The "statute of limitations should be tolled because Defendants failed to post notice of their [employees'] FLSA rights, as is required by 29 C.F.R. § 516.4. This tolling theory has been endorsed by at least two colleagues in this district, and we adopt it here." *Chavez*, 2010 U.S. Dist. LEXIS 33289 at 16-17 (citing *Cisneros v. Jinny Beauty Supply Co., Inc.*, 2004 U.S. Dist. LEXIS 2094 (N.D. Ill.); *Cortez v. Medina's Landscaping*, 2002 U.S. Dist. LEXIS 18831. *See Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978).

The "considerations that led the Seventh Circuit to adopt the *Bonham* rule to toll the ADEA administrative filing period apply with equal force to the FLSA statute of limitations. Accordingly, this court holds that an employer's failure to post the notice required by 29 C.F.R. § 516.4 tolls the limitations period until the employee acquires a general awareness of his rights under the FLSA." *Cortez*, 2002 U.S. Dist. LEXIS 18831 at 20. In the captioned case the plaintiff testified in his affidavit that he was unaware of his rights under the FLSA until he first contacted his attorneys. Decs. of Pltf. at ¶ 13. Because the defendants did not post the required notices, any applicable statutes of limitation should be tolled, and the plaintiff should be allowed to recover unpaid wages going back to the beginning of his employment by the defendants.

In any event, because the defendants have defaulted, they have not raised any affirmative defenses. "The statute of limitations is an affirmative defense. Complaints need not anticipate or plead around affirmative defenses." *Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. Ill. 1999) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). The statute of limitations can even be waived if not raised by a defendant in its answer. *See Passananti v. County of*

*Cook*, 2010 U.S. Dist. LEXIS 107778, 16-17 (N.D. Ill.) (citing *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981); *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990)). Whether or not the *Bonham* rule applies, the defendants should not be allowed to avail themselves of a defense they did not bother to raise. Finally, the facts that give rise to tolling under the *Bonham* rule (the defendants' failure to hang a wage and hour poster) are not elements of the plaintiff's FLSA claim, and he was therefore under no obligation to plead them in his complaint in order for them to have effect.

     **6.**    **The Bonham rule also tolls the applicable, Illinois statutes of limitation; but again, the statute of limitations is an affirmative defense which the defendants have not raised.**

The *Bonham* rule should be applied to toll any applicable statutes of limitation that arise under state law as well. The rights and remedies set forth in the IMWL and the IWPCA are analogous to those that Congress set forth in the FLSA. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 U.S. Dist. LEXIS 18370, *passim* (N.D. Ill.) (Lefkow, J.). The legislative intent underpinning the FLSA and Illinois's wage and hour legislation is similar if not virtually identical. *Id.* at 13, 17, 21. The "FLSA is substantially similar to the IMWL in requiring a minimum wage and maximum hours." *Id.* at 13. And, not only is the legislative policy section of the IMWL "strikingly similar to the language found in the 'Congressional finding and declaration of policy' section of the [FLSA, 29 U.S.C. § 202(a), n5], but the purpose of the IMWL as set forth by Illinois courts is similar to that of the FLSA." *Id.* at 17 (citations omitted). Just like "the United States Supreme Court's recognition [in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)] that the FLSA embodies a public right, Illinois courts have recognized that both the IMWL and the IWPCA involve public rights." *Id.* at 20.

In general, "[w]hen state law provides the statute of limitations for a claim, a court will apply the tolling rules of the state." *Ottaviano v. Home Depot, Inc.*, USA, 701 F. Supp. 2d 1005, 1011 (N.D. Ill. 2010) (citations omitted). But there appears to be no authority on whether a *Bonham*-type rule applies to IMWL and/or IWPCA claims. And, "where there is 'an absence of Illinois decisions dealing with a particular labor law issue, federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant." *Id.* at 12 (citing *Bernardi v. Village of North Pekin*, 135 Ill. App. 3d 589 (3d Dist. 1985); *Bd. of Governors v. Rothbardt*, 98 Ill. App. 3d 423 (4th Dist. 1981)). In its analysis, the Court should note that 820 ILCS 105/9 requires employers to post notice of employees' wage and hour rights in language that tracks the federal requirement found in 29 C.F.R. § 516.4.

Given the above, the *Bonham* rule should be applied to toll any applicable statutes of limitation that arise under state law in the captioned case. But just as with regard to the FLSA claims, the defendants did not bother to raise the statute of limitations as a defense to the plaintiff's supplemental claims. They cannot now avail themselves of this defense.

### 7. The parties' settlement agreement was not approved by the Court and, therefore, it cannot constitute a waiver.

Releases of FLSA claims are void as a matter of law, unless they are approved by the court or the Secretary of Labor. *O'Brien v. Encotech Constr. Servs.*, 183 F. Supp. 2d 1047, 1049 (N.D. Ill. 2002), *passim*; *See also Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 U.S. Dist. LEXIS 183, 27.

> Wage and hour laws:
>
> provide a floor, both as to amount and frequency, below which parties are precluded from contracting with respect to payment for labor services. Such laws by their very nature deny parties the right to contract for the payment of wages at amounts less, and at intervals less frequent, than the law requires; it is their manifest public policy to limit freedom of contract with respect to the

11

payment of wages in order to serve more important public purposes. Permitting an employer to violate a minimum wage law, and escape legal consequences by paying an employee something to forget about the violation, undermines the proper functioning of these laws almost as effectively as simply failing to follow them in the first instance.

*O'Brien*, 183 F. Supp. 2d at 1049 (N.D. Ill. 2002). FLSA rights "are nonwaivable."

*Id.* at 1050 (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704-07 (1945).

The FLSA:

> is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay. Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages. Courts therefore have refused to enforce wholly private settlements.

*Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Tracking federal law, the Illinois Supreme Court "has held that where a right is conferred for the benefit of the public at large rather than solely for the benefit of the individual, the right is nonwaivable." *O'Brien*, 183 F. Supp. 2d at 1049 (citing *Ladegaard*, 2001 U.S. Dist. LEXIS 18370 at 20; *Recht v. Kelly*, 82 Ill. 147 (1876)). And, "where a right is conferred for the benefit of the public at large, and the implementation of that right requires a limitation of the directly-involved individuals' freedom of contract, the argument in favor of nonwaivability is particularly compelling." *Id.* at 1049-1050. That "an Illinois court faced with this issue would follow *Brooklyn Savings Bank* . . . is strongly suggested by the principle recognized by Illinois cases that federal decisions dealing with federal labor law issues are persuasive, even if not controlling, in interpreting a similar Illinois labor law in the absence of Illinois authority." *Id.* at 1050 (citing *Bernardi v. Village of North Pekin*, 135 Ill. App. 3d 589 (1985). Quite simply, "'Any agreement between [an employee] and his

employer to work for less than [the wages provided by the IMWL] is no defense to such action.'" *Renteria v. Italia Foods, Inc.*, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill.) (quoting 820 ILCS 105/12) (brackets in original).

Thus, any argument that the plaintiff waived his ability to recover the full measure of damages because of the parties' settlement agreement[4] is without merit because the agreement had not yet been approved by the Court when the defendants abandoned their defense of the case.

The plaintiff had elected to heavily discount his demand in the settlement agreement based, in large part, upon the defendants' indication that they would raise the statute of limitations as an affirmative defense and vigorously fight the issue. Now that the defendants have abandoned the case, the plaintiff will not raise the statute of limitations against himself.

### 8. The FLSA's fee shifting provision.

The FLSA further provides that:

> [t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b)

Prevailing plaintiffs, including even those who settle favorably, are entitled to recover attorneys' fees under the FLSA. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (citing 29 U.S.C. § 216(b); *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001); *Connolly v. National School Bus Serv.,* 177 F.3d 593. 595 (7th Cir. 1999)). A court has discretion in awarding attorneys' fees under the FLSA, but established

---

[4] See the plaintiff's Motion to Enforce Settlement Agreement and for Sanctions [Doc. 22].

guideposts exist.  A court will "generally follow the 'lodestar' approach, multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Small*, 264 F.3d 702 at 707 (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999)).  A reasonable hourly rate should "reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'"  *Small*, 264 F.3d 702 at 707.  Finally, "The attorney is entitled to his market rate and not some 'medieval just price' determined by the court."  *Id*. (quoting *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992)).

The IMWL and IWPCA also provide for the assessment of attorneys' fees.  820 ILCS 105/12(a); 820 ILCS 115/14(a).

In the captioned case, the Plaintiff's attorneys seek fees at rates which have been recently awarded to them by the Court in other FLSA actions or, in the case of attorney Kalisa Gary, at rates which she charged clients for similar work.  *See* Decs. of Attys., **Exhibit 4** to the accompanying Motion.

WHEREFORE, the plaintiff prays that this Court will grant his Motion for Entry of Default Judgment [Doc. 29] in its entirety.

Respectfully submitted,

/s/Paul Luka
One of the Plaintiff's Attorneys

Roy P. Amatore, Esq.
Paul Luka, Esq.
AMATORE & ASSOCIATES, P.C.
120 S. State St., Suite 400
Chicago, Illinois  60603
312.236.9825